THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANTHONY SALDI, DEBRA SALDI, and TBD ENTERPRISES, LLC,, <br><br> Plaintiffs, <br> vs. <br><br> AMERICAN NATIONAL BANK, RODNEY L. LAIBLE, RD INDUSTRIES, INC., RD FAMILY LIMITED PARTNERSHIP, and RDI BUILDING, LLC, <br><br> Defendants. | Case No. <br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

COME NOW Plaintiffs and for their Complaint against Defendants state and allege as follows:

## **PARTIES**

1. Plaintiff Anthony Saldi ("Anthony") is an individual residing in Omaha, Douglas County, Nebraska.

2. Plaintiff Debra Saldi ("Debra") is an individual residing in Omaha, Douglas County, Nebraska. Anthony and Debra are husband and wife.

3. Plaintiff TBD Enterprises, LLC is a Nebraska limited liability company doing business in Omaha, Douglas County, Nebraska. TBD Enterprises, LLC is managed by Anthony. TBD Enterprises, LLC, Anthony, and Debra may be referred to collectively as "the Saldis" for ease of reference.

4. Defendant Rodney L. Laible ("Rodney") is an individual residing in Omaha, Douglas County, Nebraska.

5. Defendant RD Industries, Inc. is a Nebraska corporation doing business in Omaha, Douglas County, Nebraska. RD Industries, Inc. is owned, managed, and controlled by Rodney.

1

6. Defendant RD Family Limited Partnership is a Nebraska limited partnership doing business in Omaha, Douglas County, Nebraska. RD Family Limited Partnership is owned and controlled by Rodney.

7. Defendant RDI Building, LLC is a Nebraska limited liability company doing business in Omaha, Douglas County, Nebraska. RDI Building, LLC is owned, managed, and controlled by Rodney.

8. Rodney, RD Family Limited Partnership, and RD Industries, Inc. will be referred to collectively as "Laible."

9. American National Bank ("ANB") is a Nebraska corporation doing business as a bank in Omaha, Nebraska.

## JURISDICTION AND VENUE

10. Plaintiffs invoke this Court's jurisdiction under 18 U.S.C. §1964, 28 U.S.C. §1331, and the pendent and supplemental jurisdiction of the Court pursuant to 28 U.S.C. §1367.

11. This Court has personal jurisdiction over Defendants because Defendants are residents of this judicial district and transact business and solicit business in Nebraska, within this judicial district and elsewhere.

12. Venue is proper in this judicial district under 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b)(2) because Defendants reside here, are found here, have agents here, transact their affairs here, and are subject to personal jurisdiction in Nebraska. Venue is also appropriate because the real property at issue is located within this judicial district and a substantial part of the events giving rise to Plaintiffs' claims occurred here.

## FACTUAL BACKGROUND

13. Saldi and Laible were former business partners that developed the Cherry Hills area located near the Irvington exit off I-680 north in Omaha. At all relevant times, the Parties, either jointly or separately, owned various lots and parcels of real property in the Cherry Hills Business Park and Cherry Hills Village subdivisions.

14. In order to finance the development, the Parties borrowed money from ANB, including a $2,300,000 construction loan (ANB Loan Number 477101) issued on or about March 8, 2006 ("the Loan").

15. The Loan and other loans of the Parties were secured by collateral, consisting of Lots 2, 3, and 4 in Cherry Hills Business Park and two undeveloped lots consisting of approximately 15.5 and 17.8 acres.

16. Lot 1 of Cherry Hills Business Park Replat 2, a Subdivision In Douglas County, Nebraska ("Lot 1") was owned solely by Anthony and Debra. Lot 1 was never pledged as collateral by the Saldis on the Loan or requested or secured as collateral by ANB on any loan related to the Parties.

17. The Loan matured on March 15, 2009, at a time when the Parties had ample funds to satisfy the Loan in full. In or around early 2009, the Saldis and Laible had a falling out, asserted claims against each other, and desired to terminate their relationship. ANB was fully apprised of the problems, disputes, and issues between the Saldis and Laible.

18. On approximately July 24, 2009, ANB requested that the Saldis agree to extend the maturity date on the Loans until August 31, 2009 in order to benefit Laible and so Laible could refinance the Loan and continue to engage in other dealings and transactions with ANB. The Saldis objected to any extension as they no longer wanted to be affiliated with Laible and wanted to ensure that they could have no liability on the Loan after it matured.

19. Instead of being immediately made whole by the payoff of the Loan, ANB insisted upon extending the Loan to profit from other and future dealings with Laible. To induce the Saldis to agree to an extension, ANB promised and represented that the Saldis would have no more obligations regarding the Loan and that they could not be damaged or harmed by an extension because Laible would be unconditionally responsible for full repayment of the Loan by a date certain.

20. On December 22, 2009, ANB, the Saldis, and Laible executed a Loan Modification Agreement ("the Modification Agreement") that released the Saldis from their personal guarantees and all other liabilities or obligations on the Loan. The Modification Agreement confirmed that the previous collateral securing the Loan would remain in place and not be changed or increased. Under the express terms of the Modification Agreement, Laible absolutely and unconditionally guaranteed full repayment of the Loan by January 3, 2011. In exchange for these material considerations, among others, the Saldis agreed to release a complaint that they had filed against ANB with the Office of the Comptroller of the Currency regarding ANB's actions and suspect banking and lending practices.

21. Laible was also to be solely responsible for paying the taxes and assessments on the properties securing the Loan through its maturity.

22. On or near the Loan's maturity date of January 3, 2011, ANB's internal records reflect that Laible had a net worth of $30,890,000 and $1,041,000 in available cash flow, more than adequate funds to pay off the Loan under the terms of the Modification Agreement. On February 18, 2011, ANB's Loan file notes that "Ron Laible has taken full responsibility of the repayment of the debt." The admission contained in ANB's internal records further demonstrates that the Saldis had no further liability or obligation on the Loan whatsoever and

that ANB had no basis to seek recovery against the Saldis and no interest in any of their property, including Lot 1.

23. ANB failed to honor or enforce the terms of the Modification Agreement or satisfy the Loan through proceeds available from Laible. Instead, ANB unilaterally extended the maturity date on the Loan.

24. On May 23, 2011, ANB executed a change in terms agreement with Laible that extended the maturity date of the Loan to July 1, 2011.

25. Similarly, on July 12, 2011, ANB executed another change in terms agreement with Laible that further extended the maturity date of the Loan to January 10, 2012.

26. The Saldis were not asked to and did not agree to extend the maturity dates of the Loan.

27. Without the knowledge of the Saldis, ANB and Laible conspired and schemed to defer satisfaction of the Loan to defraud the Saldis and misappropriate Lot 1, which was not collateral for the Loan.

28. On March 21, 2011, Laible sent an email to ANB stating, "What I need done is the liens dropped for Lots 2 and 3 CHBP Replat 2 and the 32 acres of raw ground that is Saldi's property now but keep Lot 1 CHBP and adjacent lot that I own as collateral."

29. At the time, ANB was fully aware that Lot 1 had never been requested or obtained as collateral to secure the Loan.

30. In accordance with the scheme between ANB and Laible, on November 21, 2011, ANB issued a notice of default on the Loan indicating its intention to conduct a trustee's sale to foreclose on Lot 1.

31. ANB's representations were false.

32. Lot 1 was never collateral for the Loan as verified by ANB's own internal records, including those dated January 5, 2006, January 9, 2006, August 28, 2008, July 28, 2009, November 23, 2009, December 10, 2010, and February 18, 2011. ANB's Loan file also contained an October 29, 2009 agreement between Laible and the Saldi's listing Northwest Bank, not ANB, as the lender for Lot 1.

33. Jim Barett, a former agent, representative, and loan officer of ANB, who issued the Loan on behalf of ANB, confirmed on multiple occasions that Lot 1 was not sought or included as collateral for the Loan.

34. After the notice of default, but prior to the trustee's sale, ANB knowingly and intentionally altered its Loan file to show that Lot 1 was collateral under the Loan. Attached as Exhibit "A" is a copy of ANB's February 12, 2012 Watch List Memo where it retroactively and fraudulently inserted Lot 1 as collateral on a Loan issued **nearly 6 years earlier**. None of ANB's records prior to February 12, 2012 show Lot 1 as collateral for the Loan.

35. Even assuming *arguendo* that ANB had somehow lawfully acquired a security interest in Lot 1, which it clearly had not, ANB waived, forfeited, and released that security interest when it extended the maturity date of the Loan without the Saldis' knowledge or consent and refused to collect the sums due under Loan from Laible in accordance with the Modification Agreement.

36. ANB based the alleged default and trustee's sale on misrepresentations that the taxes and assessments on the properties serving as collateral on the Loan were not paid and were somehow the obligation of the Saldis. The taxes and assessments on Lot 1 were current at the time of these allegations and ANB's own records establish that the taxes on the properties were satisfied or could have been satisfied by Laible. Prior to the trustee's sale, the Saldis attempted

to contact ANB several times to discuss taxes and assessments allegedly due. ANB refused to meet with or discuss any purported issues with the Saldis.

37. The notice of default and trustee's sale would not have been necessary if the Bank honored the terms of the Modification Agreement and had not agreed to twice extend the maturity date on the Loan without the Saldis' knowledge or consent. ANB orchestrated a sham default and debt in order to acquire Lot 1 and transfer it to Laible.

38. On February 29, 2012, ANB purported to hold a trustee's sale and issued a trustee's deed to itself for Lot 1, among others, as the only bidder.

39. On February 1, 2013, in order to complete the scheme, ANB purported to transfer Lot 1 and other properties by special warranty deed to Laible through his entity, RDI Building, LLC.

## FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS – VIOLATION OF THE RACKETEER INFLUENCE AND CORRUPT ORGANIZATIONS ACT

40. Defendants have engaged in a pattern of racketeering activity, a scheme, and a conspiracy to create, impose, and collect unlawful debts and unlawfully seize Lot 1. To further their scheme and conspiracy, Defendants made fraudulent filings and misrepresentations through the mail, with the Douglas County Register of Deeds, and in the foreclosure process.

41. Defendants have received income and benefit from a pattern of racketeering activity and through the collection of an unlawful debt. Defendants have engaged in an enterprise and activities that impact interstate commerce.

42. Defendants have acquired and/or are maintaining Lot 1 through a pattern of racketeering activity and through the collection of an unlawful and illegitimate debt.

43. The Saldis have suffered damages, including the loss and misappropriation of Lot 1, as a result of Defendants' racketeering activity.

### SECOND CLAIM FOR RELIEF AGAINST ANB – BREACH OF CONTRACT

44. The foregoing Paragraphs are incorporated by reference.

45. The Saldis and ANB entered into the Modification Agreement.

46. ANB materially breached the Settlement Agreement by, among other things:

    a. Failing to ensure and demand that Laible pay off the Loan on or before January 3, 2011;
    b. Failing and refusing to collect the sums to satisfy the Loan by January 3, 2011;
    c. Engaging in a conspiracy and scheme with Laible designed to wrongfully foreclose on Lot 1 and transfer it to Laible;
    d. Fabricating a default of the Loan and conducting a sham trustee's sale;
    e. Allowing Laible to extend the maturity date of the Loan on two occasions without the Saldis' knowledge or consent;
    f. Retroactively and fraudulently claiming Lot 1 as collateral on the Loan;
    g. Claiming to take title to Lot 1; and
    h. Purporting to transfer title to Lot 1 to Laible through one of his entities.

47. As a direct and proximate result of ANB's breach of contract, the Saldis have suffered damages, including the loss of the fair market value of Lot 1 of no less than $1,675,000.

### THIRD CLAIM FOR RELIEF AGAINST ANB – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

48. The foregoing Paragraphs are incorporated by reference.

49. Implied in every contract is the covenant of good faith and fair dealing.

50. ANB owed the Saldis a duty of good faith and fair dealing. The duty of good faith and fair dealing required ANB to refrain from doing anything that would injure the right of the Saldis to receive the benefit under the Modification Agreement.

51. ANB breached the covenant of good faith and fair dealing by, among other things:

    a. Failing to ensure and demand that Laible pay off the Loan on or before January 3, 2011;

    b.    Preventing and impairing the repayment of the Loan;
    c.    Failing to utilize and seek repayment of the Loan through other sources of collateral unrelated to the Saldis;
    d.    Failing and refusing to collect the sums to satisfy the Loan by January 3, 2011;
    e.    Engaging in a conspiracy and scheme with Laible designed to wrongfully foreclose on Lot 1 and transfer it to Laible;
    f.    Fabricating a default of the Loan and conducting a sham trustee's sale;
    g.    Allowing Laible to extend the maturity date of the Loan on two occasions without the Saldis' knowledge or consent;
    h.    Retroactively and fraudulently claiming Lot 1 as collateral on a Loan;
    i.    Claiming to take title to Lot 1; and
    j.    Purporting to transfer title to Lot 1 to Laible through one of his entities.

52. As a direct and proximate result of ANB's breach of the covenant of good faith and fair dealing, the Saldis have suffered damages, including the loss of the fair market value of Lot 1 of no less than $1,675,000.

## FOURTH CLAIM FOR RELIEF AGAINST ANB – NEGLIGENCE

53. The foregoing Paragraphs are incorporated by reference.

54. Pursuant to the Modification Agreement and their relationship, ANB owed duties to the Saldis, including to ensure that the Loan was paid off by January 3, 2011, to ensure that the Saldis would not be harmed by any extension of the Loan beyond January 3, 2011, to exhaust available sources of collateral before looking to any collateral of the Saldis, and to refrain from impairing, impeding, or hindering repayment of the Loan.

55. ANB breached the duties owed to the Saldis by, among other things:

    a.    Failing to ensure and demand that Laible pay off the Loan on or before January 3, 2011;
    b.    Preventing, impairing, impeding, and hindering repayment of the Loan;
    c.    Failing to utilize and exhaust other sources of collateral unrelated to the Saldis;
    d.    Failing and refusing to collect the sums to satisfy the Loan by January 3, 2011;
    e.    Allowing Laible to extend the maturity date of the Loan on two occasions without the Saldis' knowledge or consent;
    f.    Foreclosing on collateral that was not subject to the Loan; and
    g.    Failing to demand strict compliance of the Modification Agreement by Laible.

56. The notice of default, trustee's sale, and effective seizure of Lot 1 were improper and would not have been necessary if ANB had not extended the maturity date of the Loan and collected the full amount owed from Laible in accordance with the Modification Agreement.

57. As a direct and proximate result of ANB's negligence, the Saldis have suffered damages, including the loss of the fair market value of Lot 1 of no less than $1,675,000.

### FIFTH CLAIM FOR RELIEF AGAINST ANB – VIOLATION OF THE NEBRASKA CONSUMER PROTECTION

58. The foregoing Paragraphs are incorporated by reference.

59. ANB has engaged in unfair and deceptive acts and practices in the conduct of commerce. These acts and practices include:

   a. Engaging in a conspiracy and scheme with Laible designed to wrongfully foreclose on Lot 1 and transfer it to Laible;
   b. Falsifying its records to include collateral that was not taken to secure a loan;
   c. Making misrepresentations in the foreclosure process and making knowingly false representations regarding the scope of its Deed of Trust;
   d. Orchestrating a sham notice of default and trustee's sale to acquire property to which it was not entitled; and
   e. Making false and material representations and promises in order to stop an investigation by the Office of the Comptroller of the Currency regarding its banking and lending practices.

60. Upon information and belief, ANB has in the past and continues presently to engage in similar unfair and deceptive acts and practices in Nebraska and has engaged in a pattern of calculated conduct intended to defraud numerous citizens and borrowers of Nebraska.

61. ANB's unfair and deceptive acts of practice affect the public interest of the State of Nebraska;

62. As a result of ANB's actions, the Saldis have suffered damages and further request costs, attorney fees, and the statutory sanctions authorized by Neb. Rev. Stat. § 59-1609.

### SIXTH CLAIM FOR RELIEF AGAINST ANB –

## SLANDER OF TITLE

63. The foregoing Paragraphs are incorporated by reference.

64. ANB made false and malicious statements that disparaged Anthony and Debra's title to Lot 1, including within the February 29, 2012 trustee's deed and the February 1, 2013 special warranty deed.

65. The actions of ANB constitute the slander of title to Lot 1 and entitle Anthony and Debra to attorney fees under Neb. Rev. Stat. § 76-296.

## SEVENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS –
## ACTION TO QUIET TITLE

66. There is a genuine dispute as to the title to Lot 1 and the validity of any claimed interest or title held by any of the Defendants.

67. The Saldis pray that this Court quiet title to Lot 1 in the name of Anthony and Debra, determine that Anthony and Debra are the full and true owners of Lot 1, determine and find that the Defendants possess no right, title, interest, or claim in or to Lot 1, and order RDI Building, LLC to immediately transfer good and marketable title to Lot 1 to Anthony and Debra without any liens or encumbrances.

## EIGHTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS –
## DECLARATORY JUDGMENT

68. The foregoing Paragraphs are incorporated by reference.

69. The Saldis have interests under the Modification Agreement, Loan, and Deed of Trust related to the Loan. The Saldis' rights, status, and legal relations with the Defendants are affected by those documents.

70. The Saldis seek a declaration from the Court declaring the following:

- Lot 1 was not collateral for the Loan;
- ANB had no right or legal basis to foreclose on Lot 1;
- Even assuming *arguendo* that ANB had lawfully acquired a security interest in Lot 1, ANB waived, forfeited, and released that security interest when it extended the maturity date of the Loan without the Saldis' knowledge or consent and refused to collect the sums due under Loan from Laible in accordance with the terms of the Modification Agreement;
- ANB materially breached the Modification Agreement;
- The trustee's sale held on February 29, 2012 in relation to Lot 1 was null, void, invalid, and illegal;
- The February 29, 2012 trustee's deed in relation to Lot 1 is void, invalid, and had no legal effect;
- the February 1, 2013 special warranty deed is void, invalid, and had no legal effect;
- Anthony and Debra are the full and true owners of Lot 1; and
- Defendants possess no right, title, interest, or claim in or to Lot 1.

WHEREFORE, the Plaintiffs pray for the following relief:

1. A judgment against Defendants, jointly and severally, on Claim 1 for all general and special damages in an amount to be determined at trial but at least $1,675,000.

2. The assessment of costs, attorney fees, and threefold damages against Defendants on Claim 1 as authorized by 18 U.S.C. §1964(c).

3. A judgment against Defendant American National Bank on Claims 2, 3, 4, 5, and 6 for all general and special damages in an amount to be determined at trial but at least $1,675,000.

4. The assessment of costs, attorney fees, and statutory damages against Defendant American National Bank as authorized by Neb. Rev. Stat. §§ 59-1609 and 76-296.

5. That the Court quiet title to Lot 1 in favor of Plaintiffs Anthony Saldi and Debra Saldi.

6. That the Court find and declare that: 1) Defendant American National Bank had no right or legal basis to foreclose on Lot 1; 2) Defendant American National Bank waived, forfeited, and released any security interest in or ability to foreclose upon Lot 1; 3) Defendant

American National Bank materially breached the Modification Agreement; 4) the trustee's sale held on February 29, 2012 in relation to Lot 1 was null, void, invalid, and illegal; 5) the February 29, 2012 trustee's deed in relation to Lot 1 is void, invalid, and had no legal effect; 6) Plaintiffs Anthony Saldi and Debra Saldi are the full and true owners of Lot 1; 7) Defendants possess no right, title, interest, or claim in or to Lot 1; and 8) the February 1, 2013 special warranty deed is void, invalid, and had no legal effect.

7. That the Court order Defendant RDI Building, LLC to immediately transfer good and marketable title to Lot 1 to Plaintiffs Anthony Saldi and Debra Saldi without any liens or encumbrances.

8. Prejudgment interest accruing at the rate of 12% per annum from February 29, 2012.

9. All such other relief as the Court deems just or equitable.

        Respectfully submitted,
        Anthony Saldi, Debra Saldi, and TBD
        Enterprises, LLC, Plaintiffs,

By:  /s/ Jason Mario Bruno
      Jason Mario Bruno, NE #23062
      SHERRETS BRUNO & VOGT LLC
      260 Regency Parkway Drive, Suite 200
      Omaha, NE 68114
      Tele:  (402)390-1112
      Fax:   (402)390-1163
      law@sherrets.com
      ATTORNEY FOR THE PLAINTIFF