IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANTHONY SALDI, et al., | |
| Plaintiffs, | 8:16-CV-61 |
| vs. | |
| AMERICAN NATIONAL BANK, et al., | MEMORANDUM AND ORDER |
| Defendants. | |

This matter is before the Court on defendant American National Bank's motion for partial summary judgment (filing 22) and the corresponding motion for partial summary judgment (filing 31) filed by defendants Rodney L. Laible; RD Industries, Inc.; the RD Family Partnership; and RDI Building, LLC (collectively, Laible). The Court will grant the motions for summary judgment and, absent a federal question, will dismiss the plaintiffs' remaining state-law claims without prejudice.

## BACKGROUND

The plaintiffs are Anthony Saldi, his wife Debra, and TBD Enterprises, an LLC managed by Anthony (collectively, Saldi). Filing 1; filing 23 at 2.[1] Saldi was attempting to develop property in Omaha, so Saldi and Laible borrowed money from American National, including a $2.3 million construction loan in 2006. Filing 23 at 3. Saldi signed a deed of trust granting American National a security interest in at least some of the development property. Filing 23 at 4. The parties' dispute about which properties were subject to a security interest is at the heart of their dispute. According to Saldi, he and his wife allowed American National to perfect a security interest in Lots 2 and 3 of the development property, but not Lot 1. Filing 37-34 at 3-4.

---

[1] Pursuant to NECivR 56.1, a party moving for summary judgment must include in its brief a statement of material facts about which the movant contends there is no dispute, and the party opposing summary judgment must include in its brief a concise response to that statement of facts, noting any disagreement. Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response. NECivR 56.1(b)(1).

By 2009, the debt was past due and American National advised that it would not entertain an extension. Filing 37-10 at 2. Saldi and Laible sued one another. Filing 37-11 at 2. Saldi and Laible entered into a settlement agreement under which Laible agreed to assume all liability on the American National debts. Filing 37-11 at 3. Pursuant to the settlement agreement, American National and Laible restructured the loans to release Saldi from any personal guaranties and establish an extended payment schedule for Laible. Filing 37-14 at 3-4; *see* filing 37-15. But the deeds of trust against the property continued to stand as collateral. Filing 37-14 at 4.

In May 2011, American National agreed to extend the deadline for Laible to pay. Filing 37-21. In July, American National extended the deadline again. Filing 37-23. On August 1, American National sent Saldi a letter advising him of the extension. Filing 37-24. On November 8, American National sent Saldi another letter, noting that Saldi had sued Laible again. Filing 37-35. The letter advised that taxes and special assessments had not been paid on the development properties, and instructed Saldi that it was his obligation under the trust deed to keep current on taxes and special assessments. Filing 37-35. The letter provided "initial notice to you that a default exists under the Deed of Trust for failure to timely pay taxes and assessments and accrued interest" and that if those matters were not addressed, "a formal Notice of Default will be filed of record and [American National] may initiate foreclosure proceedings based upon this default." Filing 37-35.

On November 21, 2011, American National issued a notice of default, specifically referencing a security interest in Lot 1. Filing 23 at 5. In February 2012, American National held a trustee's sale and issued a trustee's deed to itself for Lot 1, among other property. Filing 23 at 5. In March, American National recorded the deed. Filing 23 at 5. Saldi filed a *lis pendens* for Lot 1, which American National moved in state district court to cancel. Filing 23 at 5. In January 2013, the state court found that American National held a deed of trust for property including Lot 1, and ordered cancellation of the *lis pendens*. Filing 23 at 6. In February, American National transferred certain properties, including Lot 1, to Laible. Filing 23 at 6.

Saldi sued Laible again in state district court, alleging that Lot 1 had been lost because Laible did not pay the debt to American National. Filing 23 at 6. Saldi then filed a separate suit against Laible and American National in state court, asserting claims similar to those presented in this case, but without a federal claim. Filing 23 at 7. Saldi voluntarily dismissed that case on the same day that this one was filed, adding a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq*.

Filing 23 at 7; *see* filing 1 at 7-8. American National and Laible move to dismiss the RICO claim. Filing 22; filing 31.

## STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## DISCUSSION

Saldi's allegations, generally speaking, are that American National and Laible engaged in a scheme to unlawfully steal Lot 1, by altering records to fabricate a security interest pursuant to which American National conducted a "sham foreclosure" after Laible deliberately defaulted on the underlying loan. *See* filing 36 at 14. The question is whether any of that, even if true, would violate RICO.

To prove a RICO violation, a plaintiff must produce evidence (1) that an enterprise existed; (2) that the enterprise affected interstate or foreign commerce; (3) that the defendant associated with the enterprise; (4) that the defendant participated, directly or indirectly, in the conduct of the affairs of the enterprise; and (5) that the defendant participated in the enterprise

through a pattern of racketeering activity by committing at least two racketeering (predicate) acts. *Aguilar v. PNC Bank, N.A.*, No. 15-3514, 2017 WL 490410, at *7 (8th Cir. Feb. 7, 2017). American National and Laible both argue that they did not engage in any predicate acts, and that there is no pattern of racketeering activity. Filing 23; filing 32; filing 41; filing 42. The Court agrees that, even if Saldi's evidence of alleged predicate acts is sufficient, those predicate acts do not form a pattern of racketeering activity.

PATTERN OF RACKETEERING ACTIVITY

RICO does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity. *H & Q Properties, Inc. v. Doll*, 793 F.3d 852, 855 (8th Cir. 2015). A pattern of racketeering activity is shown through two or more related acts of racketeering activity that amount to or pose a threat of continued criminal activity. *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 356 (8th Cir. 2011). Continuity in this context refers either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. *Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1028 (8th Cir. 2008).

The problem for Saldi is that "racketeering activity"—that is, a predicate act—has a strict definition:

> "racketeering activity" means . . . any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year,

or one of several specifically enumerated federal criminal offenses. 18 U.S.C. § 1961(1). Saldi's brief cites none of those offenses. *See*, filing 36; filing 38.

The closest Saldi comes to identifying a predicate act is when he asserts (without citing the relevant federal statute) that American National used "the United States Mail to transmit letters on August 1, 2011 and November 8, 2011 and a Notice of Default on November 21, 2011, which contained blatantly false statements . . . ." Filing 36 at 14, 16. Racketeering (predicate) acts include mail fraud. *Aguilar*, 2017 WL 490410, at *7.[2] When pled as a

---

[2] Saldi also uses the word "conspiracy" repeatedly, but he did not allege one in his complaint. In any event, there is even less evidence of a conspiracy to violate RICO than there is of a RICO violation in the first instance. *See id.*; *see also Rolfes v. MBNA Am. Bank, N.A.*, 416 F. Supp. 2d 745, 754 (D.S.D. 2005).

RICO predicate act, mail fraud requires a showing of: (1) a plan or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail will be used, and (4) actual use of the mail or wires to further the scheme. *H & Q Properties*, 793 F.3d at 856.

But even assuming that Saldi's conclusory assertions regarding forged documents were sufficient to create an issue of material fact regarding the existence of predicate acts, that does not establish a *pattern* of racketeering activity. To prove a pattern, a plaintiff must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity. *Craig*, 528 F.3d at 1028. To show continuity, a plaintiff must provide evidence of multiple predicate acts occurring over a substantial period of time (closed-end continuity) or evidence that the alleged predicate acts threaten to extend into the future (open-ended continuity). *Id.* Although Saldi is not specific on this point, the Court infers from Saldi's argument that he is attempting to show closed-end continuity.[3]

A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. *Stonebridge Collection, Inc. v. Carmichael*, 791 F.3d 811, 823 (8th Cir. 2015). Two predicate offenses, while necessary, may not be sufficient to constitute a pattern of racketeering activity. *United HealthCare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 571 (8th Cir. 1996). And predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement. *Stonebridge Collection*, 791 F.3d at 823.

And that is all Saldi asserts: three alleged instances of "mail fraud," over a period of a little over 4 months. Saldi attempts to argue past this by eliding the distinction between "racketeering activity" and the entire scheme he alleges, asserting that:

> The activities in question are the falsification of bank records and loan documents, the use of the mails to carry out a scheme to defraud, and the unlawful fabrication and collection of a debt that Saldi clearly had been released from and Laible was obligated to satisfy by January 3, 2011. These activities persisted for at least 22 months from March 21, 2011 through January 30, 2013, more than adequate to impose RICO liability.

---

[3] Given that the only scheme alleged involved foreclosing on a particular piece of property, there is absolutely no evidence of open-ended continuity in any event. *See Lange v. Hocker*, 940 F.2d 359, 362 (8th Cir. 1991).

Filing 36 at 15 (citations omitted). But while those are serious allegations, the Eighth Circuit has repeatedly "rejected attempts to convert ordinary civil disputes into RICO cases. Although Plaintiffs have presented evidence sufficient to establish violations of state law, they have not presented sufficient evidence to satisfy the more onerous requirements of RICO." *Craig,* 528 F.3d at 1029.

> Virtually every garden-variety fraud is accomplished through a series of wire or mail fraud acts that are "related" by purpose and are spread over a period of at least several months. Where such a fraudulent scheme inflicts or threatens only a single injury, we continue to doubt that Congress intended to make the availability of treble damages and augmented criminal sanctions dependent solely on whether the fraudulent scheme is well enough conceived to enjoy prompt success or requires pursuit for an extended period of time. Given its natural and common sense approach to RICO's pattern element, we think it unlikely that Congress intended RICO to apply in the absence of a more significant societal threat.

*Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank,* 934 F.2d 976, 980 (8th Cir. 1991) (quoting *Marshall–Silver Constr. Co. v. Mendel,* 894 F.2d 593, 597 (3d Cir. 1990)) (quotations omitted). So, in *Lambert,* the Court of Appeals rejected the plaintiff's RICO claim by explaining that

> [v]iewing the evidence in the light most favorable to [the plaintiff], this case involves, at most, a plan to defraud a single company in connection with a single set of loan agreements. As noted above, a single transaction which involves only one victim and takes place over a short period of time does not constitute the pattern of racketeering required for long-term criminal activity under a RICO claim. There is no support in the record that a criminal scheme exists involving [the defendants] over a long period of time in connection with more than one victim.

934 F.2d at 981. Similar circumstances are present here: even assuming the truth of Saldi's allegations, he has identified only one scheme, concerning only one piece of property, and only three predicate acts just a few months apart. That is simply not a "pattern of racketeering activity" within the meaning of RICO. *See, Stonebridge Collection,* 791 F.3d at 823-24; *Rolfes,* 416 F. Supp. 2d at 753-54.

- 6 -

OPPORTUNITY FOR DISCOVERY

Saldi also argues that he should nonetheless be permitted to engage in discovery in an effort to find evidence of a pattern of racketeering activity. The Court has already rejected this argument once. Filing 29. As the Court explained then, Rule 56(d) permits the Court to defer considering a motion for summary judgment, or deny it, when "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]" But a party moving for a continuance under Rule 56(d) must make a good faith showing that the additional evidence discovered might rebut the opposing party's demonstration of the absence of a genuine issue of material fact. *Robinson v. Terex Corp.*, 439 F.3d 465, 467 (8th Cir. 2006). It is not enough for the plaintiffs to set forth some facts they hope to elicit from further discovery. *Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 836-37 (8th Cir. 2015). And the mere assertion that evidence supporting an allegation is in the opposing party's hands is insufficient to justify a denial of a summary judgment motion on Rule 56(d) grounds. *Anzaldua*, 793 F.3d at 837.

Parties invoking Rule 56(d) must do so in good faith by affirmatively demonstrating why they cannot respond to a movant's evidence as otherwise required and how postponement of a ruling on the motion will enable them, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact. *Anzaldua*, 793 F.3d at 837. In short, Rule 56(d) does not permit a "fishing expedition." *Anzaldua*, 793 F.3d at 837. As far as the Court can see, Saldi wants to go fishing. And it is apparent from the documents presented in opposition to summary judgment that substantial discovery has already been provided. *See also* filing 42 at 11. The Court sees no basis to defer granting the defendants' motions for summary judgment.

STATE LAW CLAIMS

The Court may retain supplemental jurisdiction over Saldi's state-law claims. *See,* 28 U.S.C. § 1367(c); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-41 (2009). But it is not required to do so. *See id.* In exercising its discretion, the Court must consider factors such as judicial economy, convenience, fairness, and comity. *Elmore v. Harbor Freight Tools USA, Inc.*, 844 F.3d 764, 767 (8th Cir. 2016); *see City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). And in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine will point toward declining to exercise jurisdiction over the remaining state-law claims. *Wilson v. Miller*, 821 F.3d 963, 971 (8th Cir. 2016); *Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1016-17 (8th Cir. 2015). Where

resolution of the remaining claims depends solely on a determination of state law, the Court should decline to exercise jurisdiction. *Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009).

There is nothing in this case which distinguishes it from the usual case—in fact, Saldi's allegations present potentially complicated questions of Nebraska law, in a dispute between Nebraska state residents and a Nebraska bank, involving a piece of Nebraska real property. They are best determined by a Nebraska state court.[4] *See Elmore*, 844 F.3d at 767. The Court declines to retain supplemental jurisdiction over Saldi's state-law claims, and will dismiss them without prejudice.

IT IS ORDERED:

1. The plaintiffs' RICO claim is dismissed.

2. The plaintiffs' state-law claims are dismissed without prejudice.

3. The plaintiffs' complaint is dismissed.

4. A separate judgment will be entered.

Dated this 23rd day of March, 2017.

BY THE COURT:

John M. Gerrard
United States District Judge

---

[4] The Court notes that the statutes of limitations for Saldi's claims are not implicated by dismissal. *See* Neb. Rev. Stat. § 25-201.01.